WATERS AND WATER RIGHTS
The Kaw Reservoir Authority can sell and transport water issued to it under a permit granted to the Authority by the Oklahoma Water Resources Board to Arkansas City, Kansas, if the Authority can comply with the prerequisites of 11 O.S. 310.1 [11-310.1] (1971) and 11 O.S. 37-127 [11-37-127] (1977) (effective July 1, 1978) and if it has the attributes of a private corporation referenced in these statutes. Your second question must be answered in the negative; as the City of Liberal, Kansas, is not a proper permit applicant before the Board, the Board would not be authorized to issue a permit to the City of Liberal for water from the Optima Reservoir. The Attorney General has considered your request for an opinion on the following two (2) questions: "1. Can the Kaw Reservoir Authority sell and transport water issued to it under a permit granted to the Authority by the Oklahoma Water Resources Board from Kaw Reservoir to Arkansas City, Kansas? "2. Can the Oklahoma Water Resources Board issue a permit to the City of Liberal, Kansas, for 5,037 acre-feet of water from Optima Reservoir now being constructed on the North Canadian River in Texas County, Oklahoma?" The Kaw Reservoir Authority (KRA) is a non-profit public trust, formed in 1973, for the purpose of facilitating cooperation between local governmental units to study, analyze, and provide for the needs of member cities for treated and untreated water. Member cities include ten Oklahoma municipalities and Arkansas City, Kansas; three more Oklahoma municipalities are classified as associate members. The sale and transport of water to Arkansas City was envisioned in Phase 2 of the Plan of Development, which KRA now proposes to implement. The Interlocal Cooperation Act, 74 O.S. 1001 [74-1001] et seq. (1971), at Section 1004(a) states: "Any power or powers, privileges or authority exercised or capable of exercise by a public agency of this State may be exercised and enjoyed jointly with any other public agency of this state, and jointly with any public agency of any other state . . . ." "Public agency" is defined at Section 1003(a) as "Any political subdivision of this State; . . . and any political subdivision of another state." Thus it can be seen that the member cities of KRA, as political subdivisions of their respective states, are public agencies and may therefore, under 75 O.S. 1004 [75-1004] (1971), exercise their individual powers jointly with one another; there is no loss of individual powers. The next inquiry is whether a municipality has the authority to sell and transport water out of the State of Oklahoma. The authority of the Oklahoma Water Resources Board is limited at 82 O.S. 1085.2 [82-1085.2](2) (1977): "Provided, however, no contract shall be made conveying the title or use of any waters of the State of Oklahoma to any person, firm, corporation or other state or subdivision of government, for sale or use in any other state, unless such contract be specifically authorized by an act of the Oklahoma Legislature and thereafter as approved by it." Such a contract has been specifically authorized by the Legislature in the new Oklahoma Municipal Code (effective July 1, 1978) at 11 O.S. 37-127 [11-37-127] (1977). This is a recodification of 11 O.S. 310.1 [11-310.1] (1971), which was enacted in Laws of 1957. This latter statute provides, in pertinent part, that: "Where a private corporation which furnishes water to . . . an incorporated city or town of a state adjoining the State of Oklahoma, . . . for resale to water users therein, owns, on the effective date of this Act, the title to, or any lesser interest in, lands within the State of Oklahoma upon which is located, in whole or in part, a reservoir from which such water . . . . is obtained, which reservoir has been in existence . . . for more than one (1) year prior to the effective date of this Act, and which land, or interest therein, has been owned by such corporation for more than fifteen (15) years prior to the effective date of this Act, such incorporated city or town is hereby granted permission, if authorized or empowered by the laws of such adjoining state to do so, to acquire, by purchase, from such corporation, its title to, or lesser interest in, any such lands within the State of Oklahoma, . . . for use in connection with, but only for use in connection with, the establishment, betterment or expansion of a municipally-owned water supply or system, and the necessary protection of such water supply from pollution, and the maintenance and operation of such municipally-owned water supply or system, . . ." The corresponding enactment in the new Municipal Code is virtually identical in effect, and re-establishes April 25, 1957, as the effective date of the Act. It can be seen that 11 O.S. 310.1 [11-310.1] (1971) establishes various conditions to be met prior to a sale of water such as that proposed the buyer must be an incorporated municipality authorized by the laws of its state to make the purchase; the use must be only in connection with the establishment, betterment, or expansion of a municipally-owned water supply or system, protection of the supply from pollution, or maintenance and operation of the system; the selling private corporation must have had, as of April 25, 1957, and fifteen (15) years prior thereto, title to (or lesser interest in) the lands upon which the reservoir is located; and the reservoir must have been in existence for more than one (1) year prior to April 25, 1957. (It is to be noted that these criteria have remained virtually unchanged by enactment of 11 O.S. 37-127 [11-37-127] (1977), effective July 1, 1978). If the situation fits these facts, the Legislature has specifically authorized sale or use of Oklahoma waters outside the State, as required by 82 O.S. 1085.2 [82-1085.2](2) (1977) and the Oklahoma Water Resources Board may issue a permit for such sale. However, whether or not the political subdivisions in KRA comply with the requirements of 11 O.S. 310.1 [11-310.1] (1971) is a question of fact to be determined by the Board upon application for a permit, and outside the scope of an Attorney General's Opinion. Moreover, we note that 11 O.S. 310.1 [11-310.1] (1971) and its successor address themselves to sale by private corporations, and do not mention trust authorities such as KRA. While the trust instrument creating KRA purports to authorize a sale such as that contemplated here, whether KRA has been created and operated in such a way as to have sufficient attributes to qualify as a private corporation, within the meaning of the statute, and thus have statutory power to sell, is another question of fact, and also outside the scope of this Attorney General's Opinion. We recognize the case of City of Altus, Oklahoma v. Carr,255 F. Supp. 828 (W.D. Tex. 1966), as dealing with a similar issue, but find it not dispositive of this question. In that case, a three judge federal district court held unconstitutional, as violative of the Commerce Clause, (U.S. Const. Art. I, 8), a Texas statute providing: "No one shall withdraw water from any underground source in this State for use in any other state by drilling a well in Texas and transporting the water outside the boundaries of the State unless the same be specifically authorized by an Act of the Texas Legislature and thereafter as approved by it." Tex. Rev. Civ. Stat: Ann. art. 7477b, 2 (Supp. 1965) The court found such a restriction to be a total prohibition of sale, rather than a reasonable regulation on such transactions. Referral to 11 O.S. 310.1 [11-310.1] (1971) reveals that sales are not absolutely prohibited, but are permissible once certain criteria are met; the inquiry must therefore focus on whether such criteria are reasonable, or whether the criteria themselves impose an undue burden on interstate commerce. Under our constitutional scheme, a long line of cases has established that the states retain "broad power" to legislate protection for their citizens in matters of local concern such as public health and welfare, Great Atlantic 
Pacific Tea Co. Inc. v. Cottrell (Miss. 1976),96 S.Ct. 923, 424 U.S. 366, 47 L.Ed.2d 55. The policy of the State of Oklahoma is declared at 82 O.S. 1085.17 [82-1085.17] (1977) to be to provide for water storage and utilization for the use and benefit of the public, for conservation and distribution for useful purposes, and to benefit the general welfare and future economic growth of the State Therefore, the laws regulating the use and sale of waters in Oklahoma are to promote the public health and the general welfare, and, though 11 O.S. 310.1 [11-310.1] (1971) and its successor, 11 O.S. 37-127 [11-37-127] (1977) (effective July 1, 1978) may impose certain prerequisites, these statutes cannot be said to place an impermissible burden on interstate commerce, and therefore cannot be construed as unconstitutional. Your second question regarding application by the City of Liberal, Kansas, to the Oklahoma Water Resources Board for a permit to appropriate water from the Optima Reservoir, raises several more issues. The first question to be dealt with is whether a municipality in a neighboring state is a proper applicant for such a permit. The authority of the Board is set forth at 82 O.S. 1085.2 [82-1085.2] (1977); citing from subsection 4 thereof: "To develop statewide and local plans to assure the best and most effective use and control of water to meet both the current and long-range needs of the people of Oklahoma; . . . and to aid, at all times, counties, incorporated cities and towns and special purpose districts in the state in promoting and developing flood control and water conservation in the state." (Emphasis ours) Further, Laws 1977, p. 1005, S.J.R. No. 7 indicates the legislative recognition of the fact that prior beneficial use by out-of-state users may act to vest water rights, so that water originating in this state would be irretrievably lost for future needs of citizens of this State. Considering these factors together, we consider the proposition unrealistic that an out-of-state user is a proper permit applicant before the Oklahoma Water Resources Board. We can find no intention to create the possibility that such a valuable resource as water may become bound, without compensation, to use by an out-of-state user. We do not suggest, however, that Liberal, Kansas, may not obtain water from the State. As indicated earlier, the Legislature has provided for sale of Oklahoma water from a qualified seller in accordance with 11 O.S. 310.1 [11-310.1] (1971). This portion of the opinion is limited to the question of proper applicants for a permit from the Oklahoma Water Resources Board. It is, therefore, the opinion of the Attorney General that your first question be answered as follows: The Kaw Reservoir Authority can sell and transport water issued to it under a permit granted to the Authority by the Oklahoma Water Resources Board to Arkansas City, Kansas, if the Authority can comply with the prerequisites of 11 O.S. 310.1 [11-310.1] (1971) and 11 O.S. 37-127 [11-37-127] (1977) (effective July 1, 1978) and if it has the attributes of a private corporation referenced in these statutes. Your second question must be answered in the negative; as the City of Liberal, Kansas, is not a proper permit applicant before the Board, the Board would not be authorized to issue a permit to the City of Liberal for water from the Optima Reservoir. (AMALIJA J. HODGINS)